**AFFIDAVIT OF SPECIAL AGENT THOMAS J. ZUKAUSKAS**

I, Thomas J. Zukauskas, being duly sworn, state as follows:

1.      I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed for over ten years.  I am currently assigned to a Resident Agency of the Boston Division located in Worcester, Massachusetts.  As a Special Agent, I have participated in numerous criminal investigations regarding violations of federal law, with a focus on organized crime and white collar crime, including wire fraud, mail fraud, and bank fraud.  I have conducted and participated in physical surveillance, the execution of search and arrest warrants, debriefings and interviews of cooperating witnesses, and review of documents and evidence.  Through my training, education, and experience, I have become familiar with a variety of white-collar fraud schemes and methods used to effectuate such schemes.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the examination of the following items:

   (a)   An AT&T cellular telephone bearing serial number Q4V7NB1180468999;

   (b)   a Claro SIM card bearing serial number 89010210413006440675 v01.07a;

   (c)   an AT&T SIM card bearing serial number 89014103275815899884;

   (d)   a T-Mobile SIM card bearing serial number 89012601225345500465; and

   (e)   a Claro SIM card bearing serial number 89010211013011516292 v01.07a

(collectively "the Subject Devices").  As discussed below, in March 2015, Sea Horse Ranch resort employees removed the Subject Devices from Villa #98, Sea Horse Ranch, Sosua-Cabarete, Dominican Republic.  Sea Horse Ranch resort held the Subject Devices in storage until Sea Horse Ranch management provided the Subject Devices to law enforcement in December 2016.  The Subject Devices are currently held at the FBI-Boston, Worcester Resident Agency.  A description

1

of the Subject Devices, including a photograph of the AT&T cell phone, may be found in Attachment A, hereto.

3. As set forth below, there is probable cause to believe that the Subject Devices contain evidence of crimes; contraband, fruits of crime, or other items illegally possessed; and property designed for use, intended for use, or used in committing the crimes of: (1) bank fraud and conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349; (2) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and (3) conspiracy to commit identity theft, in violation of 18 U.S.C. § 1028(f) ("the Subject Offenses").

4. This affidavit seeks a warrant authorizing the forensic examination of the Subject Devices to identify electronically stored data that constitutes evidence of the Subject Offenses, contraband, fruits of crimes and things otherwise criminally possessed, as well as property designed and intended for use, and that has been used, as a means of committing the Subject Offenses. A more specific list of items to be seized may be found in Attachment B, hereto.

5. The information contained in this affidavit is based on my personal knowledge and involvement in the investigation, information obtained by other agents and investigators involved in this matter, and other information gathered during the course of this investigation. This affidavit is submitted for the limited purpose of obtaining a warrant authorizing the search of the Subject Devices. Accordingly, it does not include all of the information gathered in regards to this investigation, but rather contains only that information necessary to establish probable cause for the requested search warrant.

## BACKGROUND AND PROBABLE CAUSE TO SEARCH THE SUBJECT DEVICES

6. In or about April 2013, Ryan Miller ("Ryan") fled the United States and began living in the Dominican Republic. At that time, Ryan was facing federal fraud and identity theft charges out of the Northern District of Illinois, *see United States v. Ryan Miller and Benjamin Megginson*, 11-CR-00292 (April 14, 2011). Ryan resided in the Dominican Republic until January 31, 2015 when he was arrested in the Dominican Republic pursuant to an arrest warrant issued in June 2012 out of the Northern District of Illinois. Ryan was extradited to the United States in February 2015.

7. While in the Dominican Republic, Ryan leased Villa #98 at the Sea Horse Ranch resort. Ryan lived in Villa #98 from approximately January 2014 until his arrest in January 2015. Ryan's girlfriend Emily Marlow and Ryan's children would stay at Villa #98 intermittently.

8. On May 5, 2016, the Court issued a complaint charging Dusten James Miller (Ryan's brother) and Latoya Monique James (Dusten's former girlfriend) with the bank fraud, conspiracy to commit bank fraud, money laundering and conspiracy to commit money laundering (Docket No. 16-mj-4261-DHH). That criminal complaint, and the allegations contained therein, is hereby incorporated by reference. *See United States v. Ryan Miller, et al.,* 16-40026-TSH, Criminal Complaint (Document Entry No. 4).

9. On June 8, 2016, a federal grand jury sitting in Worcester, Massachusetts issued a four-count indictment charging Ryan Miller, Dusten James Miller, and Latoya Monique James with the Subject Offenses.

10. On June 16, 2016, the grand jury issued a four-count superseding indictment charging Ryan Miller, Dusten James Miller and Latoya Monique James with the Subject

3

Offenses. The superseding indictment, and the allegations contained therein, is hereby incorporated by reference. *See United States v. Ryan Miller, et al.,* 16-40026-TSH, Criminal Complaint (Document Entry No. 27).

11. Both the complaint and the superseding indictment allege, generally, that the conspiracies to commit bank fraud and money laundering were ongoing during the year 2014 while Ryan Miller was living at the Sea Horse Ranch in the Dominican Republic. *See, e.g.,* Complaint at ¶¶ 22-23, 25; Superseding Indictment at ¶ 22.

12. In March 2017, I, along with other law enforcement officers, interviewed Evelyn Barrientos, the Villa Administrator at the Sea Horse Ranch resort.[1] Barrientos stated that she learned in or about February 2015 that Ryan had been arrested.

13. Ryan's lease of Villa #98 expired in or about March 2015. According to Barrientos, in late March 2015, Sea Horse Ranch employees collected all of the items in Villa #98 – including the Subject Devices – and placed those items in storage at the resort.[2] Sea Horse Ranch management maintained the items – including the Subject Devices – in storage from March 2015 until December 2016.

14. In December 2016, Barrientos provided the items removed from Villa #98 – including the Subject Devices – to the Dominican National Police. The Dominican National Police turned those items over to the FBI shortly thereafter. In addition to the Subject Devices, those items included approximately one box of records containing, among other documents, loan applications and personal identifiers that Ryan apparently used to commit several of the frauds that occurred in 2014.

---

[1] Barrientos knew Ryan by the name "Anthony Sutton" and identified "Sutton" from a photo array. The photo she identified was that of Ryan Miller.

[2] Sea Horse Ranch employees photographed the items before removing them from Villa #98.

15. As described in the complaint and superseding indictment, there is probable cause to believe that, in order to commit the Subject Offenses, Ryan and his coconspirators used telephones, email and text messages. In addition, according to Emily Marlow, Ryan communicated with her and directed her to engage in the Subject Offenses through email and phone calls.

16. I am aware that cellular phones are capable of serving as a platform for text and email communications and accessing the internet. In addition, I am aware that cell phones routinely store voice and some text messages. I am also aware that cell phones store call log information. Finally, I am aware that cell phones are capable of taking and storing photographs and videos.

17. Based on my training and experience, I am aware that individuals who use phones, email and text messages to commit crimes often keep those phones with them on their person and/or in their personal residences.

18. A SIM card, or "Subscriber Identity Module," is a smartcard that is inserted into a cellular phone and stores data separately from the data stored by the telephone itself. The data stored on a SIM card includes, but is not limited to, user identity data, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Some cellular phones may not be compatible for use with cellular networks in other countries; therefore, it may be necessary to use a SIM card from that country that is compatible with the country's wireless service.

19. Based on my training and experience and my involvement in this investigation, I submit that there is probable cause to believe that Subject Devices contain data, such as the telephone number associated with the phone, email, text messages, voice messages, internet

records, and call logs that constitute evidence of the commission of the Subject Offenses, contraband, fruits of crimes and things otherwise criminally possessed, as well as property designed and intended for use, and that has been used, as a means of committing the Subject Offenses.

20. The Subject Devices are currently in the custody of the FBI. They have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when they first came into the possession of the FBI.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices, such as the Subject Devices, can store information for long periods of time, including information regarding internet usage. This information can sometimes be recovered with forensic tools.

22. Based on my knowledge, training, and experience, electronic devices such as the Subject Devices will routinely save (or contain) a list of the most recent calls made and received and will retain evidence of the phone number that was called or from which a call was received. That information could be used to connect Ryan Miller to the Subject Offenses.

23. Based on my knowledge, training, and experience, text messages will remain on the Subject Devices for long periods of time unless specifically deleted. In my training and experience, the content of text messages, which are routinely saved with the number to whom messages are sent and from whom messages are received, could provide evidence of Ryan's involvement in the Subject Offenses as well as information regarding the identity and activities of other coconspirators.

24. Based upon my knowledge, training and experience, electronic devices such as the Subject Devices routinely contain information regarding individuals that are frequently contacted, such as contact lists. In my training and experience, that information could lead to evidence of Ryan's involvement in the Subject Offenses as well as information regarding the identity and activities of other coconspirators.

25. As further described in <u>Attachment B</u>, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the Subject Offenses, but also forensic evidence that establishes how the Subject Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic evidence might be found on the Subject Devices because:

   a. Data on a storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file);

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

26. The process of identifying the exact electronically stored information on a storage medium necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.

Whether data stored in a cellular telephone or SIM card constitutes evidence may depend on other information stored on the telephone or SIM card and the application of knowledge about how a cellular telephone or SIM card behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the requested warrants.

27. Further, in finding evidence of how the Subject Devices were used, the purpose of their use, who used them, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

### Nature of Examination

28. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants being sought would permit the examination of the Subject Devices for the items described in Attachment B. Such examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrants.

### Manner of Execution

29. Because this warrant seeks permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto private property. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30. Accordingly, I submit that the information contained in this affidavit, which by reference incorporates the information contained in the complaint and superseding indictment, establishes probable cause for a search warrant authorizing the examination of Subject Devices described in Attachment A to seek the items described in Attachment B.

_____
Thomas J. Zukauskas
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 5 th day of April, 2017

_____
HONORABLE DAVID H. HENNESSY
United States Magistrate Judge